FIRST NAT. BANK OF BUCHANAN COUNTY, ST. JOSEPH, v. CONNETT.

In re FIRST NAT. BANK OF BUCHANAN COUNTY, ST. JOSEPH.

(Circuit Court of Appeals, Eighth Circuit.  November 17, 1905.)

Nos. 2,153, 51.

1. BANKRUPTCY—VOIDABLE PREFERENCES—EFFECT OF DELAY IN RECORDING INSTRUMENTS OF TRANSFER.

In the provision of Bankr. Act July 1, 1898, c. 541, § 60a, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], as amended in Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 [U. S. Comp. St. Supp. 1905, p. 689], that "where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required," the word "required" has reference to the character of the instrument of transfer required to be recorded by the state law, rather than to the particular in-

dividuals who by reason of adventitious circumstances may or may not be affected by an unrecorded instrument. The purpose and effect of such amendment was to change the rule applied to the original and prior acts, under which, not only the requirement of recording, but the effect of a failure to record were controlled by the state law, by making instruments of transfer required by the state law to be recorded, in the sense in which such phrase is ordinarily used, speak from the date of recording, and not the date of execution, upon the question of voidable preferences.

**2. SAME—CHATTEL MORTGAGE.**

Rev. St. Mo. 1899, § 3404, requires a chattel mortgage to be recorded, within the meaning of Bankr. Act July 1, 1898, c. 541, § 60a, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], as amended in Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 [U. S. Comp. St. Supp. 1905, p. 689], although it does not make an unrecorded mortgage void absolutely and under all circumstances, and a chattel mortgage given to a creditor by an insolvent more than four months prior to his bankruptcy, although the creditor did not then know of the insolvency or have reason to believe a preference was intended, constitutes a voidable preference, where it was not recorded until within such four months and after the creditor had such knowledge.

**3. SAME—MISSOURI STATUTE.**

Even if the question of the effect of delay in recording a chattel mortgage is to be determined by the state law, under Rev. St. Mo. 1899, § 3404, which as construed by the state courts makes a chattel mortgage first come into existence as a valid mortgage when it is recorded as against prior general creditors, it then first comes into existence as to a trustee in bankruptcy of the mortgagor, and if, although given before, it is not recorded until within four months prior to the bankruptcy and under circumstances which would render it a voidable preference if it had been then given, the trustee may defeat it as such preference.

Appeal from the District Court of the United States for the Western District of Missouri.

Petition for Revision of Proceedings of the District Court of the United States for the Western District of Missouri.

The First National Bank of Buchanan County, St. Joseph, Mo., presented four promissory notes for allowance against the estate of James B. Matney, bankrupt. Two of them were unsecured; the others were secured by chattel mortgages. One of the mortgages was given October 31, 1902, and the other June 26, 1903. When they were given the bankrupt was in fact insolvent, but at that time the bank did not know and had no reason to believe that such condition existed or that Matney intended to give it a preference over other creditors. The bank withheld the mortgages from record until August 21, 1903, at which time, however, it knew that Matney was insolvent and was about to execute a deed of trust upon all of his property to secure certain of his creditors. A few days after the mortgages were recorded the bank took possession of the mortgaged property and converted it into money. The transactions occurred in the state of Missouri. The petition in bankruptcy, upon which adjudication followed, was filed September 24, 1903. Certain debts of the bankrupt aggregating $1,424.80 were incurred by him between the time of the execution and the time of the recording of the first mortgage, and it is conceded by the bank that as to the creditors to whom such debts were owing the mortgage was invalid, and that it should be required to surrender the amount thereof as a condition to the allowance of its own claims. The referee rejected the claims of the bank until it surrendered the entire proceeds of the mortgaged property, upon the ground that a voidable preference was created within the four months' period, and he was upheld in so doing by the District Court. The bank prosecuted an appeal from the order of disallowance and also, as the facts were not in dispute, a petition to revise in matter of law. The appeal will be considered, and the petition to revise will be dismissed as unnecessary, although we have heretofore held that it is a proper remedy when no disputed questions of fact are involved.

Culver, Phillip & Spencer, for appellant and petitioner.
Julian B. Shackelford, for appellee and respondent.
Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

When the mortgages were executed the mortgagor was insolvent, but the bank to whom they were given did not know it and had no reason to believe he intended to give it a preference. One of them was withheld from the record about ten months, and the other about two months. When they were recorded, which was a month before the petition in bankruptcy was filed, the bank knew the mortgagor was insolvent and contemplated a disposition of his property to secure certain of his creditors. It also knew that the inevitable effect of the enforcement of the mortgages would be to give it a greater percentage of its claims than other creditors.

The question for determination is whether under the foregoing facts there arose a voidable preference as defined by the national bankruptcy act of 1898, as amended in 1903. This involves also a consideration of the registry laws of the state of Missouri, where the transaction occurred.

Section 57g of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 560, 561 [U. S. Comp. St. 1901, p. 3443]) provides that the claims of creditors who have received preferences voidable under section 60b shall not be allowed unless such preferences are surrendered. For the definition of a preference we must look to subdivision "a" of section 60, and to subdivision "b" for the element which makes it voidable. Section 60a provides, among other things, that a person shall be deemed to have given a preference if, being insolvent, he has *within four months before the filing of the petition* made a transfer of any of his property, the effect of which will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Also:

*"Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of recording or registering of the transfer, if by law such recording or registering is required."*

By the amendatory act of 1903 the first of the italicized provisions was transposed from section 60b of the original act, while the latter is an entirely new feature. Subdivision "b" of this section, to which reference is made in 57g, provides that, if a bankrupt shall have given a preference and the person receiving it shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee. The bankrupt was insolvent when he executed the mortgages and when they were recorded. The mortgages constituted a transfer of his property, and their effect was to enable the bank to obtain a greater percentage of its claims than other creditors. They were recorded within four months of the filing of the petition in bankruptcy. Therefore, assuming that a recording is required by the law of Missouri, it follows that a preference arose under section 60a. And, in our opinion, it also follows that

the preference arose when the mortgages were recorded and not as of the date they were given. In other words, the amendment of 1903 was intended to remedy the evil resulting from secret instruments of transfer of the bankrupt's property, the withholding of them from record until shortly before the institution of bankruptcy proceedings, and the then assertion of them as of the prior date of their execution and delivery. And this was accomplished by making the rights of a creditor thus favored determinable by the conditions existing when he caused the transfer to him to be recorded as required by the state law rather than by those existing at the time he secured it. Under the act of 1867 not only the question of requirement to record a chattel mortgage, but also the effect of noncompliance therewith, were exclusively controlled by the law of the state. The same construction has been applied to the original act of 1898. Unless there has been some departure from this construction in its relation to voidable preferences, the amendment of 1903 of section 60a, upon which subdivision "b" thereof depends, is wholly without significance. Contrary to a presumed intent in legislative amendments it serves no purpose and performs no office whatever. Such result can be reasonably avoided by this construction of the amendment: It affects only those instruments of transfer which the state law requires to be registered or recorded; and, as to those, where there is delay, it provides that upon the question of voidable preference they shall speak as of the day of compliance with the local law and not as of the day they were given. This would preclude the application of the doctrine of relation, and it would entail a consequence upon a failure to record that might not be imposed by the law of the state; but we deem it to be not only within the letter of the amendment, but also within the intention to correct an evil which flourished under the construction of the original act. Within the meaning of amended section 60a of the bankruptcy act, the Missouri law (Rev. St. 1899, § 3404) required the recording of chattel mortgages. To be sure an unrecorded mortgage is not pronounced void absolutely and under all circumstances, but it "is required to be recorded" in the sense in which that phrase is customarily used, and the language of requirement is similar to that employed in the registry laws of most of the states. The word "required," found in the phrase "the recording or registering of the transfer, if by law such recording or registering is required," of the amendment of section 60a, has reference to the character of the instrument of transfer required to be recorded by the state law rather than to the particular individuals who by reason of adventitious circumstances may or may not be affected by an unrecorded instrument. Thus an affirmative answer would unhesitatingly be given to the inquiry: "Does the law of Missouri require the recording of chattel mortgages?"

The Circuit Court of Appeals of the Fifth Circuit, in a case involving the registry statute of Texas, held that, as an unrecorded chattel mortgage was good between the parties thereto and against ordinary creditors, and as there were no intervening lien holders or purchasers, it could not be said that a registry or recording was re-

quired, and upon the facts of that case it accordingly concluded that a chattel mortgage given before but placed on record within the four months before the institution of bankruptcy proceedings could not be considered as a voidable preference. Meyer Bros. Drug Co. v. Pipkin Drug Co. (C. C. A.) 136 Fed. 396. In effect this is the adoption, without exception or qualification, of the old rule that whether and to what extent a chattel mortgage given before but recorded within the four months period is valid against a trustee in bankruptcy should be determined exclusively by the state law. In our opinion, the amendment of 1903 has qualified this rule in respect of the question whether such a mortgage may constitute a voidable preference under subdivisions "a" and "b" of section 60. If this has not resulted, we fail to see that Congress has accomplished anything by the amendment.

The mortgages of the bank, required by law to be recorded, having been recorded within four months of the filing of the petition in bankruptcy and at a time when the mortgagor was insolvent, the effect thereof being to enable the bank to obtain a greater percentage of its claims than other creditors of the same class, a preference arose under section 60a. Was it voidable under 60b? In other words, did the bank have reasonable cause to believe that it was intended thereby to give a preference? The bank knew that the mortgagor was insolvent and that a preference was in fact then created, but in a strict sense it cannot be said that it had reasonable cause to believe that one was then intended. While the situation is somewhat anomalous, we believe it is within the spirit of the amended act, and that the voidable element is established by the knowledge of the bank when its mortgages were recorded that the mortgagor was insolvent and contemplated a disposition of his property. A similar question was adverted to but not determined in Humphrey v. Tatman, 198 U. S. 91, 25 Sup. Ct. 567, 49 L. Ed. 956, a case which arose before the amendments of 1903.

But if it be true that no change was made by the amendment of 1903, and that the effect of delay in the recording of transfers upon the question of voidable preferences is still to be exclusively determined by the state law, it does not follow that the trial court erred in its conclusion.

The Missouri statute provides that no mortgage of personal property shall be valid against any other person than the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee, or unless the mortgage be recorded in the county in which the mortgagor resides. The sweeping character of its provisions at once attracts attention. Under this statute it has been held that where possession is not taken an unrecorded chattel mortgage is fraudulent and void in law as to every one, excepting trespassers, parties to the instrument, and general creditors whose demands arose prior to the time it was given; nor as to such prior creditors is it valid if by proceedings in court or otherwise they have secured a lien upon the property before it is recorded. Such a mortgage is also utterly void as to simple contract creditors who extended credit after it was given and who have secured no title or lien by

purchase, execution, attachment, or otherwise. As to them the subsequent recording of the instrument is of no effect; it cannot be asserted against the enforcement of their demands. The existence of this rule was recognized in the concession of the bank that it should be required to surrender the amount of the debts incurred by the bankrupt between the dates of execution and recording of its first mortgage. It is also held that actual notice of the existence of an unrecorded mortgage does not affect the rights of purchasers, lienholders, or subsequent general creditors. Possession not being taken, the mortgage remaining unrecorded, every one, whether ignorant or fully cognizant thereof, may contract with the mortgagor as the sole and absolute owner of the property and as though such mortgage had never been given. The mortgagor may again sell or mortgage the property or suffer others to obtain paramount liens thereon. The general public is authorized to deal with him upon the assumption that the property described in such mortgage constitutes unincumbered assets of his estate. The decisions which establish these rules do not proceed solely upon the theory that innocent persons should be protected, as is the case in many jurisdictions. The Missouri courts recognize and enforce the spirit and policy of the statute, and, as the statute does not make knowledge of an unrecorded instrument dispense with the duty of the holder to record it they refrain from doing so by construction.

In Bevans v. Bolton, 31 Mo. 437, 443, it was said:

"Our statute requires a mortgage or deed of trust of personal property, where the possession is retained by the grantor, to be recorded in the county in which the grantor resides. * * * The deed is absolutely invalid against a creditor or purchaser if it is not recorded. * * * The statute is imperative in requiring the deed to be recorded, or the possession of the property conveyed to be transferred, and all questions of actual notice are purposely avoided."

To the same effect: Bryson v. Penix, 18 Mo. 13; Wilson v. Milligan, 75 Mo. 41; Rawlings v. Bean, 80 Mo. 614; Martin-Perrin, etc., Co. v. Perkins, 63 Mo. App. 310.

In Kaufman v. Sitlington, 51 Mo. App. 252, it was held that notice of a prior unrecorded mortgage was no ground of estoppel.

In Hughes v. Menefee, 29 Mo. App. 192, 203, it was said that:

"A regular written mortgage duly acknowledged, but not recorded, is void though the creditor have actual notice of it."

In Kendall, etc., Co. v. Bain, 55 Mo. App. 264, 267, there was an assertion of a lien under a lease containing mortgage features. In denying it the court said:

"It is very clear that the lease being neither acknowledged nor recorded created no lien on the goods even against those who had knowledge of it."

In Williams v. Kirk, 68 Mo. App. 457, a general creditor whose claim arose between the giving and the recording of a chattel mortgage was preferred to the mortgagee. Harrison v. Mining Co. (Mo. App.) 79 S. W. 1160, also recognizes this rule.

In Hemley v. Harmon, 103 Mo. App. 233, 77 S. W. 136, it was held

that an administrator, being not only the representative of the deceased, but also of the general creditors of the estate, could contest and defeat a chattel mortgage given by the deceased upon the ground that it had not been recorded prior to his death. An administrator was distinguished from an assignee who was said to represent alone the rights of the assignor and not those of the creditors. Jacobi v. Jacobi, 101 Mo. 507, 14 S. W. 736; Riddle v. Norris, 46 Mo. App. 512.

As to intervening purchasers and lienholders, the unrecorded mortgage is denounced as fraudulent in law irrespective of the actual fact. Rice, Stix & Co. v. Sally, 176 Mo. 107, 135, 75 S. W. 398; Wright v. McCormick, 67 Mo. 426, 430. In Landis v. McDonald, 88 Mo. App. 335, decided in 1901, a chattel mortgage given by a bankrupt more than a year before was not filed, nor was possession taken thereunder until within a few days of the initiation of the proceedings in bankruptcy. The court, after an exhaustive discussion of the state statute and review of the state decisions affecting the rights of creditors of the various classes as against such unrecorded instruments, and upon a consideration of the provisions of the bankruptcy act of 1898, held that the trustee was entitled to recover the value of the property from the mortgagee. In Babbitt v. Kelley, 96 Mo. App. 529, 70 S. W. 384, decided in 1902, the same conclusion was reached upon a similar state of facts. It is true that many of these decisions are by intermediate courts of appeal and not by the highest judicial tribunal in the state; they are, however, persuasive in their exposition of the state law.

In Landis v. McDonald, supra, it was said:

"In case of prior creditors, if the mortgage be recorded, or the mortgagee takes possession of the property before such creditor obtains a lien thereon or changes position in relation thereto, it validates the mortgage as to him. Such is the extent of the cases of which Dobyns v. Meyer, 95 Mo. 132, 8 S. W. 251, 6 Am. St. Rep. 32, is a type. But in case of subsequent creditors the mortgage is not validated by such registration or possession."

Thus, even as to a prior general creditor the mortgage is said to be validated by compliance with the statute. If, however, such creditor is more diligent and avails himself of the remedies which the law also gives him, the mortgage cannot be thereafter validated or effectually asserted against a lien which he has secured.

It may reasonably be deduced from the many decisions under the Missouri statute that, when the property is allowed to remain in the possession of the mortgagor, and the mortgage is withheld from the records, the rights of the mortgagee are inchoate; that as long as that situation exists the rights of the mortgagee are not superior even to those of prior general creditors, who also refrain from availing themselves of the provisions of the law for fastening a specific claim upon the property of their common debtor; that the taking possession or recording are alternate conditions to the effectiveness of the instrument as a mortgage as distinguished from a personal contract binding only upon the immediate parties; and, finally, that the lien of the mortgage, which is all there is of value to it, first comes into completed existence when one of these conditions is complied with.

If, therefore, under the Missouri law, a chattel mortgage first comes into existence, as a mortgage, as to general creditors, when it is recorded, it then first comes into existence as to the trustee in bankruptcy. As to voidable preferences the trustee is in effect a judgment creditor of the bankrupt (Dudley v. Easton, 104 U. S. 99, 103, 26 L. Ed. 668), whose rights as such are made by the act of 1898 to cover the period of four months prior to the institution of the proceedings in bankruptcy. If within that period a mortgage is given by the bankrupt under circumstances which make it a voidable preference, the trustee may defeat it. If one is given before but is recorded within that period, and under the local law, the fiction of relation back to the date of execution is not indulged in, but, on the contrary, the instrument is deemed to have first come into existence as a mortgage when recorded, the trustee may likewise defeat it if the conditions of a voidable preference appear.

In Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577, a mortgage covering personal property on hand and also that afterwards acquired was given and recorded some years before the passage of the national bankruptcy act. The mortgagor was left in possession with power of sale and exchange until within four months of the time he filed a petition in voluntary bankruptcy, when the mortgagee took possession of the remnant of the original property and also all of that acquired afterwards, although he then knew that the mortgagor was insolvent and contemplated the bankruptcy proceedings. The Supreme Court said that whether and to what extent a mortgage of that character was valid was a local question, and that the decisions of the state court should be followed. The case arose prior to the amendment of 1903. It appeared that, under the law of Vermont where the cause originated, the taking possession of after-acquired property under such a mortgage was held to be good and to relate back to the date of the mortgage. Specific reference was made to the concession of counsel that under the rule in that state possession taken long after the execution of the mortgage brings the property under the cover and operation of the mortgage as of its original date.

The only cases in Missouri that we are aware of which refer to the doctrine of relation to the date of a chattel mortgage in order to uphold its validity are those in which the recording occurred in some short, reasonable time thereafter, and their tendency is to negative the propriety of the general application of such a rule. In Bryson v. Penix, 18 Mo. 13, it was said:

"Our statute prescribes no time within which a deed or conveyance shall be recorded. Under such circumstances a party must have a reasonable time for that purpose, which is to be determined from the circumstances of each case; and when a deed is recorded within a reasonable time it has relation back to the time of execution."

To the same effect: Way v. Braley, 44 Mo. App. 457; Huiser v. Beck, 55 Mo. App. 668. In Wilson v. Milligan, 75 Mo. 41, the quotation from Bryson v. Penix was adverted to, but sanction of the doctrine was expressly withheld; and the case was decided adversely to the mortgagee upon the ground that he had both time and oppor-

tunity to file his mortgage for record but postponed doing so, and in the interim a creditor who had actual notice of the existence of the mortgage purchased the property.

The clear letter and policy of the Missouri statute have often been referred to by the courts of that state. The withholding of a chattel mortgage from record assists the debtor to practice a false pretense. It enables him to maintain a financial standing to which he is not honestly entitled. That is generally the actuating purpose, and it is invariably the result. It induces prior creditors to forbear and other persons to extend credit. A plain and inexpensive method is prescribed by which a mortgagee may secure a priority of lien, and the evil results that may follow from ignoring it are obvious. The fiction of relation is generally used to prevent wrong or injustice, but we find no warrant in the decisions of the courts of Missouri for its employment to defeat the evident and wholesome policy of the law. There, possession of the property not being taken, a chattel mortgage seems to speak as of the day it is recorded.

The order of the District Court is affirmed.