In the Matter of Ilus B. PATTERSON, Bankrupt,

Commercial Credit Corporation, a corporation, Petitioner.

No. 21221.

United States District Court
W. D. Missouri, W. D.

March 28, 1956.

Orie V. Melching, Kansas City, Mo., for bankrupt.

Byron E. Mintonye, Kansas City, Mo., for petitioner and claimant.

Martin B. Dickinson, Kansas City, Mo., for trustee.

William B. Bostian, Kansas City, Mo., trustee in bankruptcy.

WHITTAKER, District Judge.

This matter is now before me upon petition of Commercial Credit Corporation to review and reverse an order of the Referee entered December 6, 1955, disallowing petitioner's claim as a secured claim, but allowing it only as a general unsecured claim.

The facts, briefly summarized, are that on Saturday, October 22, 1955, the bankrupt purchased a 1956 Ford automobile from Berl Berry Motor Company in Kansas City, and, that day, executed and delivered his purchase money note and chattel mortgage to Berl Berry, Inc. in payment of the balance of the purchase price. On the same day Berl Berry, Inc. executed an assignment of the note and mortgage to petitioner, Commercial Credit Corporation, and, on the next business day, Monday, October 24, 1955, Berl Berry, Inc., following what appears to be its usual practice in its dealings with Commercial Credit Corporation, attached the note and mortgage to a $1,900 draft drawn on Commercial Credit through First National Bank in Kansas City, and delivered the draft and attachments to Commerce Trust Company for presentment and collection, and on the next day, Tuesday, October 25, 1955, Commerce Trust Company presented said draft and attachments to the First National Bank where and when the draft was paid by Commercial Credit Corporation, which then became the owner of the note and chattel mortgage. On Friday, October 28, 1956, Commercial Credit Corporation mailed the mortgage to the Recorder of Deeds of Jackson County, Missouri, at Kansas City, who received and filed it for record at 9:00 a. m. on Saturday, October 29, 1955. The automobile was delivered to the bankrupt on, and remained in his possession after, the time of the purchase on October 22, 1955, though the chattel mortgage was not "filed" until seven days later, on October 29, 1955, and, meanwhile, the bankrupt incurred two creditors, one on October 24 in the amount of $116, and one on October 27 in

the amount of $1,257.48, who have filed claims in this bankruptcy proceeding.

On November 8, 1955, the bankrupt filed herein his voluntary petition in bankruptcy and was adjudged a bankrupt on that day.

Thereafter, on November 25, 1955, petitioner, Commercial Credit Corporation, filed herein its Proof of Secured Claim in the amount of $2,130.24, based upon said chattel mortgage, which claim the Referee disallowed as a secured claim but allowed only as a general unsecured claim, upon the ground that the mortgage had not been timely "filed" as required by Section 443.460 RSMo 1949, V.A.M.S., and the decisions construing the same, and to review and reverse that order petitioner has brought this petition for review.

■ Though Section 443.460 RSMo 1949, V.A.M.S., does not fix a definite time for the filing of a chattel mortgage to make it good against innocent purchasers, lienors and trustees in bankruptcy, the Missouri courts and Federal courts dealing with the problem have uniformly held that the mortgage, to be so effective, must be filed promptly. These cases are collected in U. S. Hoffman Machinery Corp. v. Lauchli, 8 Cir., 150 F.2d 301, and in Mercantile Trust Co. v. Kahn, 8 Cir., 203 F.2d 449. In the latter case it was held that withholding of the mortgage from record for five business days, when all the parties resided in or near the city in which the Recorder's office was maintained, was too long, and rendered the mortgage void as to subsequent innocent purchasers, lienors, etc.

Here, all the parties resided, and were doing business, in Kansas City, where the Recorder's office is located. It, therefore, must be held, and in fact is conceded by petitioner, that the mortgage was not filed promptly enough to make it valid against subsequent innocent purchasers, lienors, etc., under Section 443.460 RS Mo 1949, V.A.M.S., as construed by the cases cited.

■ But petitioner says the timeliness of the filing of its mortgage is not dependent upon the local law of Missouri, but that Section 96, sub. a(7) I(B) of Title 11 U.S.C.A. as adopted March 18, 1950, gave it 21 days to file the mortgage, in the light of the fact that the Missouri statute, Section 443.460 RSMo 1949, V.A. M.S., does not specify a stated period of time within which a chattel mortgage must be filed. But in my view this is a misconception of the law. The Missouri statute mentioned and the cited cases construing it deal with how and when a chattel mortgage must be filed to render it good—that is to say not a fraudulent conveyance—against innocent subsequent purchasers, lienors, etc., under the law of the state, whereas Section 96, Title 11 U.S.C.A., deals only with voidable preference transfers in bankruptcy, and, more particularly, with the *time* when such transfers will be deemed to have occurred for the purpose of ascertaining whether—if found to be preferences under the Bankruptcy Act—they occurred within four months prior to bankruptcy and are, therefore, voidable.

■ To be a "transfer" it must be good against all under the law of the state, and, therefore, in the case of a chattel mortgage, it must have been "promptly" filed or recorded. But, being good against all under the law of the state, the transfer is still subject to avoidance in bankruptcy if it amounted to a "preference" (in the bankruptcy sense) and if it was "made or suffered" within four months prior to bankruptcy. It is only with this latter aspect that Section 96 purports to deal. It has nothing to do with the time of filing a chattel mortgage to make it valid against all under the law of the state. It has only to do with "preferences" in bankruptcy, and with when they will be deemed to have been "made or suffered" in determining whether they are voidable as having occurred within four months prior to bankruptcy.

Note that the opening paragraph, subparagraph a(1), deals with preferences.

It defines a preference as "a transfer * * * of any of the property of the debtor to or for the benefit of a creditor for or on account of an antecedent debt, *made or suffered* by such debtor while insolvent and *within four months* before the filing" of a petition in bankruptcy by or against the debtor. Thus, a question nearly always exists as to when a transfer will be deemed to have been "made or suffered"—that is, whether it was "made or suffered" within four months prior to bankruptcy.

The next paragraph of the section, subparagraph a(2), provides that, for these purposes, a transfer of personal property "shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee."

Subparagraph (7) of the section, so far as here material, provides:

"Any provision in this subsection a to the contrary notwithstanding, if the applicable law requires a transfer of property other than real property for or on account of a new and contemporaneous consideration to be perfected by recording, delivery, or otherwise, in order that no lien described in paragraph (2) of this subsection could become superior to the rights of the transferee therein * * * the time of transfer shall be determined by the following rules:

"I * * * where (B) the applicable law specifies no such stated period of time or where such stated period of time is more than twenty-one days, and compliance therewith is had within twenty-one days after the transfer, the *transfer* shall be deemed to be made or suffered at the time of the *transfer*."

The meaning of this language can perhaps be made most clear by an example. Suppose that a debtor owes a note to a bank. The debt is, therefore, antecedent. The banker asks for collateral. The debtor, though insolvent, accedes, and transfers some of his property (his automobile, by a chattel mortgage) to the bank as security for the antecedent debt. The banker does not file or record the mortgage until the 20th day. Three months and 28 days later the debtor files a petition in bankruptcy. The transfer (constituted by the mortgage) to the bank will not, under this statute, be deemed to have been "made or suffered" within four months prior to the bankruptcy, because, the mortgage having been filed within 21 days, "the transfer shall be deemed to be made or suffered at the time of the (actual) transfer", and, therefore, more than 4 months prior to the bankruptcy, and, hence, not voidable, as a "preference", in bankruptcy. But if, on these assumed facts, the bank had not filed or recorded its mortgage within 21 days, the transfer would not relate back to the date it was actually made, and, thus, the bankruptcy would have ensued within 4 months, and if it constituted a "preference", in the bankruptcy sense, it would be voidable as having been "made or suffered" within 4 months prior to bankruptcy.

This, I think, illustrates what the statute means, and shows that it applies only to voidable preference transfers in bankruptcy, and, more particularly, to the *time* when such transfers will be deemed to have occurred for the purpose of ascertaining whether or not they occurred within 4 months prior to bankruptcy, and are, or are not, therefore, voidable, and that the statute has nothing to do with the question of when a chattel mortgage must be filed to create an effective lien under the law of the state.

The mortgage in question having been held off record for 7 days, when all of the parties resided, or were doing business, in Kansas City where the Recorder's office was located, it follows, under the cases hereinabove cited—and, in fact, is conceded by petitioner—that the

**834**

mortgage was not "promptly" filed, in the sense of the Missouri decisions, and is, therefore, void as against the Trustee in bankruptcy, and that the Referee's determination to that effect was right and must be affirmed. It is so ordered.